UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

Eastern District of Kentucky
FILED
SEP 27 2005
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 2004-259

DEBORAH HERALD OBO
    BRANDON K. HERALD (minor)                              PLAINTIFF

VS.                      **OPINION AND ORDER**

JO ANNE BARNHART
COMMISSIONER OF SOCIAL SECURITY                       DEFENDANT

     This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 10) and the motion for summary judgment of the defendant (Doc. 12). The court has also considered the supplemental memorandum of the plaintiff (Doc. 15) and has listened to the audio tape of the April 7, 2004 administrative hearing.

     Plaintiff has brought this action on behalf of her minor son, Brandon, seeking review of the Commissioner's decision that Brandon is no longer disabled and terminating his benefits.

     In 1987, when Brandon was one year old, his mother filed an application for Child's Supplemental Security Income (benefits) based upon his asthmatic bronchitis. Brandon was found disabled at the initial level of consideration and granted benefits as of November 1, 1987. The Commissioner reviewed Brandon's condition in May 1989 and found his impairments were still disabling. The Commissioner re-evaluated Brandon's condition in August, 2000 and determined that his disability ended on August 1, 2000. The

1

Appeals council denied review and the plaintiff filed suit in this court. On September 3, 2003, this court granted in part the plaintiff's motion for summary judgment finding the ALJ failed to articulate his analysis for finding medical improvement.

On April 7, 2004, the ALJ held a new hearing on claimant's claim. The claimant turned 18 a few months before the hearing. Therefore, the ALJ also performed an evaluation as to whether the claimant was disabled under the Act as an adult. The ALJ issued an unfavorable decision on both the child and adult disability claims and the claimant now appeals that decision to this court.

In reviewing the decision of the ALJ in Social Security cases, including those involving children, the only issue before the court is whether the decision is supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971); <u>Lowery v. Commissioner of Social Security</u>, 55 Fed. Appx. 333, No. 01-5970 (6th Cir. 2002). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." <u>Alexander v. Apfel</u>, 17 Fed. Appx. 298, No. 00-5710 (6th Cir. 2001) (<u>citing Buxton v. Halter</u>, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The Social Security Act provides:

> (I) An individual under the age of 18 shall be considered disabled for purposes of this subchapter if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and

2

which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.

(ii) Notwithstanding clause (I), no individual under the age of 18 who engages in substantial gainful activity . . . May be considered to be disabled.

42 U.S.C. § 1382c(a)(3)(C)(I) and (ii).

The Administration has promulgated regulations implementing this provision and providing the method for reevaluating a child's disability. In reevaluating a finding of disability in a child, the administration must first consider whether there has been medical improvement[1] in the child's impairment. 20 C.F.R. § 416.994a(a)(1). If there has been improvement the administration will determine if the child still meets the severity of the listing the child met at the time of the administration's last favorable decision. If he no longer meets that listing, the administration will determine whether his current impairment is disabling under the rules in 20 C.F.R. § 416.924.

At the first step, the ALJ determined that the claimant has had medical improvement since May 17, 1989, the date of the most recent favorable decision. At step two, the ALJ found that the claimant's impairments, as of August 1, 2000, no longer met or

---

[1]The regulations define medical improvement as:
"any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled. . . . A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairment(s)."

20 C.F.R. § 416.994a(c).

3

equaled Listing 103.03A. Therefore, the ALJ looked to whether the claimant's impairment was otherwise disabling.

During the disability analysis, the ALJ found that the claimant suffers from bronchial asthma, allergic rhinitis, and allergic conjunctivitis that are considered "severe." The ALJ determined that these impairments did not, however, meet, equal or functionally equal any of the listing of impairments. Therefore, the ALJ concluded that the plaintiff's disability had ceased as of August 1, 2000.

The claimant first argues that the ALJ could not show medical improvement because the 1989 decision awarding benefits is not in the record and, therefore, there is nothing for the ALJ to compare to determine whether medical improvement occurred. The court finds that the record contains numerous documents that establish that claimant was awarded benefits because his condition met or equaled Listing 103.03A.[2] (AR pp. 15, 86-90, 210, 240, 242). The court notes that the claimant does not dispute that he was initially granted disability benefits because his condition met Listing 103.03A. Accordingly, if the claimant no longer met this listing in August 2000, medical improvement occurred.[3]

---

[2] Listing 103.03A provides:
103.03 Asthma. With:
A. FEV equal to or less than the value specified in Table I of 103.02A;

[3] The claimant also argues that the ALJ erred in not discussing the medical evidence of claimant's condition prior to August 2000. The Commissioner, however, agrees that the claimant was disabled prior to August 2000. Accordingly, the relevant inquiry is whether claimant still met the relevant listing after August 2000. The court finds that the ALJ's decision reflects

4

In this court's previous decision, it held that the ALJ had failed to articulate the reasons he found claimant's impairment no longer met, medically equaled or functionally equaled Listing 103.03A. In the current decision, the ALJ stated:

> The medical record confirms treatment and prescription of breathing medication at the Asthma and Allergy center through October 1999 (Exhibit 25). However, a pulmonary function study performed in June 2000 yielded values which were above the regulatory listing tables and which were interpreted as showing only mild obstruction and mild restriction (Exhibit 26). Reviewing medical experts in August 2000 did not find that the claimant continued to meet or medically equal a regulatory listing (Exhibits 27 & 28), and a chest x-ray in October 2000 showed no active disease process and was otherwise normal except for an indication of mild right maxillary sinusitis. Follow-up x-rays and laboratory examinations have continued to show no active disease process (Exhibit 29, 35, 36).
>
> . . .
>
> It is clear that the claimant experienced medical improvement as of August 2000. He performed a pulmonary function study just two months earlier which yielded values well above the regulatory tables for his height, and clinical treatment records reflect a diminishment of required medication beginning as early as October 1999. Not only was there medical improvement as of August 2000, but the record as of that date does not reflect a condition which met or continued to medically or functionally equal section 103.03A of the regulatory listings. The claimant's breathing values were too high, and the record otherwise generally supports the findings of the reviewing physician in April 2001 concerning the claimant's ability to function in each of the domains requiring consideration, as discussed more fully below.
>
> When deciding functional equivalence, a child's functioning is evaluated in terms of six domains of functioning: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. Section 416.926a of the Regulations.

---

that he considered the relevant medical evidence in reaching his decision. See 20 C.F.R. § 404.1526.

There may be a marked or severe limitation when a child's impairments limit only one activity or when the interactive and cumulative effects of the impairments limit several activities.

. . .

The evidence in this case shows that the claimant's impairment did not result in marked limitation in at least two domains or an extreme limitation in at least one domain of functioning from the time of his medical improvement until he turned age 18. With respect to his ability to acquire and use information, the claimant testified that he has always had difficulty reading or performing more than very simple math. Significantly, in April 2001 the claimant's English teacher reported that the claimant was in regular English classes with very low grades, but not as a result of his intellectual ability. Instead, the teacher commented that the claimant did not care about the quality of his work and was subject to a lack of motivation typical of many students at his school (Exhibit 19). In other words, this teacher was apparently of the opinion that the claimant could do much better at his English classes and his schoolwork in general if he had the motivation to do so. The record otherwise contains no documentation of diminished intelligence or other significant mental difficulty Accordingly, it is determined that while the claimant was still under the age of 18 he had less than marked impairment of acquiring and using information. Giving him the benefit of the doubt, it is determined that now that he is an adult he should only be required to perform jobs that do not require more than very simple reading, writing, and math.

The second domain is the claimant's ability to attend and complete tasks. For this domain, an evaluation is made of how well the claimant is able to focus and maintain attention. Pertinent factors include how well the child begins, carries through, and finishes activities. There is no evidence to indicate that the claimant had any limitation in this domain while he was still a child. Such limitations were not part of the basis for originally awarding him benefits, nor are any established by the record as it has now been developed.

The third domain of functioning is the claimant's ability to interact and relate with others. In evaluating this domain, consideration is given to how well the claimant initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. Again, there is no indication in the record that while the claimant was still a child he had any limitation in this area. In fact, the

6

claimant described good interactions with his mother, and his only claimed limitations involved those associated with his continued wheezing and breathing difficulties. Thus, no limitation is established in this domain.

The fourth domain of functioning is the claimant's ability to move about and manipulate objects. In evaluating this domain, the undersigned looks at how the claimant moves his body from one place to another, and moves and manipulates things. As summarized above, while the claimant was under the age of 18 he continued to require medical attention to his asthmatic condition, including hospitalizations to bring under control more acute exacerbations of that condition. The claimant is also credited with respect to his description of a need for use of a nebulizer and other breathing medication on a daily basis. His breathing status could reasonably be expected to affect his ability to engage in physical exertion, as he described in his testimony. Accordingly, it is found that the claimant had a marked impairment of his ability to move about and manipulate objects while he was still a child.

The fifth domain of functioning is the claimant's ability to care for himself. In evaluating this domain, consideration is given to how well the claimant maintains a healthy emotional and physical state, how well he gets physical and emotional wants and needs met in appropriate ways, how well he copes with stresses and changes in the environment, and how well he takes care of his own health, possessions, and living area. The claimant testified that he does his own personal grooming, and there is no indication that this has not been the case since August 2000 when the medical improvement described above first occurred. The claimant testified that he helps his mother with shopping, and this is another activity which appears to have been performed since childhood. The record does not establish that the claimant has any limitation with respect to caring for himself.

Finally, the sixth domain of functioning is the claimant's health and physical well-being. The undersigned looks at the cumulative physical effects of his physical and mental impairments along with their associated treatments or therapies and how they impact the claimants' functioning. For the "health and physical well-being" domain, a marked limitation is present if the child is frequently ill because of the child's impairments that result in significant, documented symptoms or signs. For purposes of this domain evaluation, "frequent" meant that the child has episodes of illness or exacerbations that occur on an average of three times a year, or once every four months, each lasting two weeks of more. A marked limitation is also present when a child has episodes that occur more often than three times in a year or once every four months but do not last for two

7

weeks, or occur less often than an average of three times a year or once every four months but last longer than two weeks, if the overall effect (based on the length of the episodes or their frequency) is equivalent in severity. An extreme limitation is present if the claimant has episodes of illness or exacerbations resulting in significant, documented symptoms or signs substantially in excess of the requirements for showing a marked impairment. While the record shows that the claimant has required occasional hospitalizations to take care of exacerbations of asthma and bronchitis, it also shows that such episodes have been quickly resolved through the use of oxygen and appropriate medication. Such episodes have not been of the frequency necessary to show a marked or extreme limitation in this domain. It is determined that the claimant had a less than marked impairment of his health and physical well -being as of August 2000, while he was still a child.

Based upon the above analysis, the claimant did not have a marked limitation in two domains or an extreme limitation in one domain from August 1, 2000, until he turned age 18 in February 2004. His impairment as of that date thus did not meet, medically equal, or functionally equal the regulatory listings, and his disability for purposes of receiving supplemental security income as a child therefore ceased. The claimant's entitlement to such benefits was properly terminated as of October 31, 2000, the end of the second calendar month after the month in which disability ceased.

(AR. pp. 469-478).

The court finds that the ALJ's decision that the claimant has had medical improvement is supported by substantial evidence. Specifically, the claimant had previously been awarded benefits based upon his meeting Listing 103.03A, which requires his forced expiratory volume (FEV) be equal or less than the value listed in table I of Listing 103.02A. In June 2000, the claimant was 71 inches tall and, therefore, needed to have a FEV of 1.65 or less to meet the listing. Dr. Alam's medical note of June 12, 2000, indicates that claimant's FEV was 1.78 and the pulmonary function study performed on the same date was interpreted as showing only mild obstruction and restriction (AR 208-09). In addition, the

8

evidence demonstrates that the claimant was treated symptomatically and had good response to the medications.

The court has no doubt that the claimant suffers from severe asthma. However, the objective evidence, as outlined by the ALJ, does provide substantial evidence to support the ALJ's decision that the claimant no longer meets, or medically or functionally equals, Listing 103.03A.

The court also finds that the ALJ's finding that the claimant did not functionally meet any other listings is also supported by substantial evidence. The ALJ evaluated claimant's condition under the six domains of functioning and found the claimant had a "marked" limitation in only one domain, ability to move about and manipulate objects, and did not have an "extreme" limitation in any domain. The claimant argues that consulting physician Sexton found claimant had "marked" limitation of the health and physical well being domain and, therefore, the ALJ erred in finding claimant did not have a "marked" limitation at this domain. The ALJ, however, noted that although the claimant has had hospitalizations because of exacerbations of his asthma, the evidence indicated that his episodes quickly improved through drug therapy and, therefore, did not have the severity required to meet this domain.

In addition, the ALJ found claimant had a "marked" limitation in the ability to move about and manipulate objects domain even though Dr. Sexton did not find claimant so limited in this domain. The ALJ's finding in this domain was based on the same analysis of Dr. Sexton in the health and physical well being domain.

9

Specifically, the ALJ found that claimant's drug therapy and hospitalizations indicate that his breathing condition could reasonably be expected to affect the claimant's ability to engage in physical exertion and thus, inhibit his ability to move about and manipulate objects. The court finds the ALJ performed the requisite review of claimant's condition under the six domains and that substantial evidence supports his findings.

Claimant also argues that the ALJ erred in discounting the opinion of his treating physician. To support his argument, claimant cites to a notation of May 26, 2004 on a Fragge Allergy & Asthma Clinic prescription pad that states in its entirety: "Mr. Brandon Herald has severe asthma with persistent shortness of breath & wheezing. He is unable to work." The court agrees that claimant suffers from severe asthma. However, the doctor's statement that claimant is unable to work is not supported by any medically acceptable clinical or laboratory diagnostic results. It is well established that a treating physician's opinion in only entitled to greater weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(d)(2). This one sentence note, is not properly supported and not entitled to great weight.

The court finds the ALJ's finding that the claimant did not meet the standards for finding disability for a child is supported by substantial evidence.

In determining a claim of disability for an adult, the Social Security Act requires the Commissioner to follow a five-step

10

process. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity". Heston v. Commissioner of Social Security, 245 F.3d 528,534 (6th Cir. 2001) (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)(citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate he suffers from a severe impairment. Id. Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§404.1520(d) and 416.920(d)(2000)). Fourth, the claimant is not disabled if his impairment(s) do not prevent him from doing his past relevant work. Id. Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. Id. (Citing Abbott, 905 F.2d at 923).

At step one, the ALJ found that the claimant has not engaged in substantial activity since turning eighteen years of age. At step two, the ALJ found that the claimant's bronchial asthma, allergic rhinitis and allergic conjunctivitis are severe impairments. At step three, the ALJ found that although severe, claimant's impairments do not meet or equal a listed impairment found in Appendix 1, Subpart P, Regulation No. 4. At step four,

11

the ALJ determined that the claimant has no past relevant work. At step 5, the ALJ found that the claimant could perform work that existed in significant numbers in the national economy. Thus, the ALJ found the claimant was not disabled under the Act.

The claimant argues that the ALJ erred at step five of his analysis because the vocational expert (VE) provided inappropriate jobs for someone with the claimant's impairments. Specifically, the claimant argues that the VE identified deli slicer, kitchen worker and library clerk jobs when it is evident that someone with his coughing and wheezing problems could not sustain such employment due to sanitation standards in the food service jobs and his coughing being an auditory distraction in a library setting.

The court finds that even if the claimant is correct, the VE identified other jobs that exist in the economy that the claimant can perform. See Troxal v. Commissioner of Social Security Administration, 113 Fed. Appx 80, No. 03-6486 (6th Cir. 2004) (VE identified sufficient number of jobs that even if all disputed jobs were eliminated, substantial number of jobs would still be available to claimant). Specifically, claimant could work in a video rental store, 730 jobs locally and 99,900 jobs nationally, or other self-service store, such as Wal-mart or Target, with 1,210 jobs locally and 168,330 jobs nationally. The ALJ also mentioned that a person with the limitations identified by the ALJ could perform the positions of general cashier, 6,665 local jobs and 873,250 nationally, and general office clerk jobs, 1,185 locally and 151,990 jobs nationally. Accordingly, the court finds the

claimant's argument unavailing as the VE identified several jobs the claimant can perform, which are available in substantial number in both the local and national economy.

The claimant further argues that the VE identified the position of library clerk as unskilled when the Dictionary of Occupational Titles (DOT) identifies that position as requiring training of six months to one year. The claimant argues that this discrepancy raises issues of the VE's credibility.

The Sixth Circuit has held that the Social Security Regulations do not require the Commissioner or the vocational expert to rely on the DOT. Conn v. Secretary of Health and Human Serv., 51 F.3d 607, 610 (6th Cir. 1995); 20 C.F.R. §404.1566(d) &(e). "An ALJ may rely on vocational expert testimony notwithstanding contrary conclusions in the DOT if the expert is found to be credible, Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994), and the question posed to the expert accurately reflects the claimant's physical and mental limitations." Strong v. Social Security Administration, 88 Fed. Appx 841, 846, No. 02-5604 (6th Cir. 2004), see also Wright v. Massanari, 321 F.3d 611, 616 (6th Cir. 2003).

Here, the ALJ found the vocational expert credible. An ALJ's credibility determinations are entitled to substantial deference. Barker, 40 F.3d at 795. Accordingly, the court finds the ALJ did not err by accepting the vocational expert's opinion. The court further finds, that even if the VE erred in identifying library clerk as an appropriate job for someone with claimant's

13

qualifications, the VE provided numerous other appropriate jobs that demonstrate a substantial number of jobs are available for which the claimant is qualified.

The court finds the ALJ's decision is supported by substantial evidence and that the claimant did not establish disability under either the child or adult standards.

The court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 10) be, and it is, hereby **denied** and that the motion of defendant for summary judgment (Doc. #12) be, and it is, hereby **granted**. That this matter be, and it is, hereby dismissed and stricken from the docket of this court

This 27th day of September, 2005.

_William O. Bertelsman_

**WILLIAM O. BERTELSMAN, JUDGE**